All right, we'll call our first case of the day, Jose Juan Chavez Alvarez v. Warden York County Prison et al. May it please the court, my name is Valerie Birch and I represent the appellant, Jose Chavez. Your Honor, it gives me great pride to be here today representing Mr. Chavez. He is a father, a lawful permanent resident of the United States, a homeowner, and he served nine years in the United States Army. Well, he also got convicted of some pretty serious crimes and dishonorably discharged, so he may be a fine person, but he's got some serious problems on his record and that's why we're here, right? Yes, Your Honor. So let's focus not so much on the good or the bad about him, but on the legal issues we're confronting. And one of the primary ones is the government's argument that this is a little like the kid who kills his parents and then says, that this is a person who has created delay in the system and then says, give me a bail hearing because I've been in prison so long. Why don't you attack that? Because that seems to be a point they hit pretty hard. What's your response to that, Ms. Birch? Your Honor, my client and I did not cause delay in the proceedings. We did what was required to litigate the case. These cases take time. His case is especially complicated. I think that is demonstrated by the fact that the Board of Immigration Appeals took eight months just to decide it after the briefs were in and issued a precedential decision when it did so. It took the immigration judge an inordinate amount of time to decide the case. He ordered briefs on multiple issues. In fact, the first brief that the immigration judge ordered was by the government because it is, in fact, the government's burden of proving that he's removable. Where do you think the Supreme Court cases point? The facts of the cases that the Supreme Court has decided, Zabidas and D'Amour. I mean, D'Amour was only a six-month detention, yet it seems to me that the justices were talking about brief hearings. The average time it takes to conclusion is like five months. We've got a little different situation here. How would you say that the Supreme Court opinions help your case? Well, Your Honor, D'Amour upheld the statute we're discussing today on the grounds that the detention was for a brief and limited time. Six months was or actually five months was the amount of time that was considered reasonable in that case. This is 30 times that. This case has been pending now for nearly two and a half years. This case is more like the cases the Court decided, Diop and Leslie, where those petitioners were detained for almost three years and almost four years. Those cases are comparable because there were multiple complicated issues. There were appeals and remands in those cases. This Court is currently tentatively set to hear the arguments in the underlying merits case of Mr. Chavez at the end of January. Now, when the District Court had the case, it was in December. It had been a year and a half. We now have it in November of the next year. Do we look at it reviewing what they did at a year and a half juncture, or do we step back and say, wait a minute, this is going to be three years by the time we write precedentially on this. Something's got to give. What do we do? Your Honor, it would be a waste of judicial resources and inefficient for the Court to only consider the time that was presented, the amount of detention that was existent when we brought the habeas in the District Court. In fact, that's the approach. This Court took the approach that all of the time should be counted when issuing its decision in the Leslie and DEOP cases, and that reasons with the Court's precedent. How do we deal with that, Ms. Burtstow, given that part of what we emphasized in DEOP was that there has to be an individualized determination about the delay. And if there's substantial, and I think I understand your point, which is you could get caught in an endless feedback loop if every time it came up on appeal you said, now we have to send it back to figure out about the delay. But how do we square DEOP's insistence upon an individualized determination with what you and the ACLU amicus seem to be pressing for, which is a blanket rule that there just ought to be an automatic presumption at a certain period of time. I think the key word there, Your Honor, is presumption. The determination should still be individualized with the presumption. And that would help the district courts a lot so that we don't end up in this continuous litigation that's occurring here. But isn't DEOP precedent that we don't, I mean, we would have to embank this case, would we not, in order to come up with a six-month rule in light of DEOP? I don't think so, Your Honor, because DEOP did not decide that question on the statutory argument, which the amicus will address. But the DEOP decision was based on the constitutional argument and interpretation of the – actually, I should let the amicus address that. That's their argument. All right. That's fine. Thank you. Counselor, I have one preliminary question here. Petitioner is now subject to a final administrative removal order, and we stayed that. If that stay is lifted and he is removed, does that not move the other issues in this case? If he is removed, he will not be detained, and therefore we do not have a habeas to argue. I mean, the merits would be preserved, I presume, but the argument before us now would not be, correct? Yes, Your Honor. There is an argument that he could return to the United States if the court ruled favorably on his underlying arguments against removal. But this habeas would be moot. This habeas would be moot if he was deported. But the court did enter a stay, and that does show that he is likely to prevail on the merits because that is the standard under Kent. Okay. Thank you. Thank you, Your Honors. Have you reserved rebuttal time at all? I'm hoping to reserve two minutes of rebuttal, Your Honor. You're reserving two minutes of rebuttal. Yes. All right. Thank you. May it please the Court, Michael Tan on behalf of AMICI ACLU Immigrant Rights Project and the ACLU of Pennsylvania. Three years ago this Court held in Diablo, that mandatory immigration detention without any review violates both the statute and the due process clause when it stretches beyond a reasonable period of time. Counselor, I'm having a little trouble hearing you. Could you adjust the microphone so it's a little closer to you? Yes, Your Honor. Can you hear me better? That's better, yes. So three years ago this Court held in Diablo that mandatory detention beyond a reasonable period of time violates both the statute and due process. And since then the district courts have struggled with how to apply Diablo. This case is a good example. As Judge Rendell pointed out, it's been more than two and a half years and counting that Mr. Chavez has been detained in this case. It's going to be likely more than three years based on where his PFR is right now. And this is so even though the parties essentially agree that most of his detention is simply due to the time needed to decide his bona fide challenges to removal, not to delay tactics and not to frivolous claims. Now, Mr. Tan, when you say most of the delay, et cetera, you start to get into an individualized assessment, right? Right. Okay. So I would like you to answer the same question that I put to Ms. Birch. You say in your reply brief that DEOP requires, quote, as a constitutional matter, unquote, that the reasonableness of continued mandatory detention be assessed in each individual case. How does that square with the assertion that the government should be presumptively put to the burden of justifying the detention because time and time alone has passed? Right. So the rule we're proposing, Your Honor, is not a one-size-fits-all rule. I thought it was six months and there's a presumption. Right. So it's a rebuttable presumption at six months to the court of the immigration judge. Is that a one-size-fits-all? When you say every case there's a presumption at six months, isn't that one-size-fits-all? So it's uniform in the sense that at six months you would ordinarily be entitled to a bond hearing, but it would still permit consideration of the individual facts of the case. So if the government showed that the person was engaged in delay tactics, raising frivolous claims, they were going to be deported tomorrow, in that case mandatory detention may well be reasonable. And that was also the position the ACLU took in DEOP, right? That's right, Your Honor. And we rejected it, so how could we, in the face of what we said in DEOP, expressly rejecting that position, adopt it now? Even if we thought, you know what, it's a good idea, the government's messing around here, they're not doing what we've asked them to do in DEOP, even if all that were true, how could we rule the way you want in light of the ruling in DEOP? So as we set forth in our brief, Your Honor, DEOP only precluded a bright-line rule as a constitutional matter, so we agree that this panel is bound by the constitutional holding of DEOP. We didn't state it in that limited way, did we, in DEOP? You're kind of drawing on it, but it's not stated specifically as being so limited, is it? There's not a limitation in that nature, but the rejection of the presumption is in the constitutional section of the opinion. The statute is then construed to have an implicit reasonableness limit. In our view, the court is still free to determine the process. I don't know how you separate the constitutional and the statutory argument. It basically is constitutional. I mean, Zavidas has said, you know, at some point it's a constitutional issue if there is no limit on detention. So isn't the constitutional aspect pervasive? So the court construed the statute to avoid constitutional concerns. For the reasons set forth in our brief, we believe the court is free to adopt a presumption to determine whether detention is reasonable, but at a minimum there. How do we get there, Mr. Tian? You've said we can do it by interpreting the statute instead of the Constitution, but Judge Rendell's question strikes me as having inherent in it an accurate premise, which was also the premise in the Ninth Circuit's Rodriguez decision, and that is the only way we get to the statutory ruling that you'd like is because we're involved in an exercise in constitutional avoidance because it's the Constitution that's forcing us into that line of analysis. So isn't the Constitution driving it either way, whether you want to label it statutory or you want to label it constitutional? It's a constitutionally driven conclusion. That's correct, Your Honor. In our view, a six-month presumption would allow for more consistent decision-making. It's a better rule that would provide access to detainees. But at a minimum, and forgive me, Your Honor, I just want to also point out that should the court not be inclined to adopt a six-month rule, there are other ways that it can clarify the job standard. All right, then tell us. Because I have a problem with six months. I have a problem with the idea of the presumption, but I have a problem with six months also because then that blurs the distinction between 1226A and 1231A. We'd be saying, oh, this is like savvy dust, but it really isn't. And so if the court's not inclined to go that way, there are two key ways to clarify the standard here, and I know I'm going to cut into my rebuttal time. That's all right. If we want to hear more from you, we'll let you talk. Thank you. So first the court should make clear that under Leslie, the fact that a detainee pursues a bona fide challenge for removal doesn't justify his prolonged mandatory detention, even if he didn't prevail before the immigration test. Although then you get into, okay, what's a bona fide challenge? How meritorious was his challenge? I mean, I don't know that that helps, but go ahead. Well, I don't think the lower courts need to get into that question. The standard that Leslie put forth is a bona fide standard because it recognizes it would be unfair to penalize detainees with long-term mandatory detention simply for pursuing legitimate claims. They may not ultimately prevail, but they certainly have a right to pursue those claims. That's clear in Leslie. And here what the district court did was require that you win on your claim in order for it not to be counted against you. That's not what the standard the court adopts. Even if we accepted that and you make a compelling argument that perhaps the district court misstepped there, do you have anything other than a presumption that would be a systemic fix that would assist in resolving the problem you've identified, which is, as I take it, thousands of people in detention, no way for them to get even a bail hearing without going through the exercise of habeas, et cetera? Do you have anything other than a presumption that addresses that? No, Your Honor. I think the clarification I just described would be helpful in ensuring that people who have legitimate claims for removal aren't penalized for pursuing them. But in terms of a widespread systemic fix, the six-month presumption is the best approach. The other point that I think calls out for clarification by this court is that under DEOP, a detainee does not need to show unreasonable delay or error by the government in order to obtain a bond hearing. It's true in DEOP itself the court relied on the fact that there was unreasonable error and delay, but that's not a requirement. DEOP recognized that the constitutionality of mandatory detention is a function of length, and so at some point a bond hearing is required. And it also recognized that although, you know, it's frequently the case in removal cases the actors are acting reasonably, but those steps can add up to an unreasonable and ultimately unconstitutional period of time. How do you think the D'Amour court would decide this case? Write that opinion for me. As this court recognized in DEOP, D'Amour did not bless the constitutionality of long-term mandatory detention. That's putting your argument kind of negatively, isn't it? It did not bless long-term detention? I mean, it talked about a brief period during the removal proceedings. It talked about a brief period of time necessary for removal proceedings, and this case has clearly exceeded that brief period of time that D'Amour and this court in DEOP recognized as being constitutionally suspect. And we may well agree with you on that, but your argument here today goes well beyond that, right? I mean, you've got a concern, I'm sure, for Mr. Chavez-Alvarez and his particular plight, but your argument is, again, it's a systemic argument. You're saying this is affecting lots and lots of people, and so I guess the difficulty that I'm having is I recognize the problem you're putting your finger on, but I'm a little troubled about your suggestion that time alone could dictate the answer to that when our words in DEOP are pretty clear that time alone doesn't dictate it. Well, to be clear, Your Honor, it's not that delay by the parties would be irrelevant. If the detainee is, in fact, engaging in delay tactics, that might be a reason to continue his mandatory detention. Conversely, if the government has engaged in delay, that should make mandatory detention unreasonable. We're simply saying it's not a requirement. In cases where no one has engaged in delay tactics, length alone should entitle you to a bond hearing at some point. How do you assess this, then? Quote, reasonableness by its very nature is a fact-dependent inquiry requiring assessment of all the circumstances of any given case. End quote. That's our language from DEOP. Right. So is your position that at some point all other factors fade into insignificance because time itself becomes so dominant? I think DEOP needs to be clarified, Your Honor, because DEOP includes that language, but also language recognizing that reasonable actions can add up to an unreasonable period of detention. That's also language in the opinion, and I think there's been confusion in the lower courts around that. The other reason why length alone is the primary factor is because of this Court's decision in Leslie. So Leslie very clearly holds that although someone might be responsible for pursuing relief, they're not responsible for the time it takes. So you will often have situations where the government hasn't acted badly, the detainee hasn't acted badly, and yet if there's a requirement that the government have delayed, that detainee is going to be penalized essentially for merely pursuing his claim for relief, and that's foreclosed by Leslie. So in those cases, length has to entitle you to a bond hearing. Thank you, Your Honor. I'm done. All right. Thank you. Judge Mygaard, anything? Yeah. One other question here just comes to mind. How long did his – how many months did his total removal proceedings take with all of his petitions, all of the hearings and that sort of thing? How long did that take? I don't have my briefs at home with me. I'm sorry. I can't get to them right now. How long did that take? So, Your Honor, Mr. Chavez was before the immigration judge nearly nine months and then nearly 11 months before the Board of Immigration Appeals, which is, of course, far beyond the one-and-a-half to five-month thresholds that the Supreme Court focused on in DeMore. The BIA dismissed his appeal in March of 2014, so it went from June of 2012 to March of 2014, and you could arguably say it's still going on because that appeal is before us in January. That's right, Your Honor. So then that would argue against what you want here as far as a six-month bright-line rule. If it takes that long to get to the merits of his position, doesn't that indicate that what is going on in this case is reasonable? No, Your Honor, and that's because of what this Court held in Leslie, that the mere fact that someone is pursuing a legitimate bona fide challenge to removal doesn't make his mandatory detention reasonable. It's true, and Leslie is very clear on that. A person is responsible for choosing to fight their case, but they're not responsible for the time it takes for that case to be decided. Okay, we'll hear from you, Your Honor, about it. Thank you. I have no other questions. Good morning, Your Honor. May it please the Court, my name is Leon Fresco with the Department of Justice. On behalf of the police, if you have any initial questions, I'd like to answer those before I... Okay. We'll have plenty. We're not going to finish those up quickly. Fair enough. I'd just like to start by entering where Ms. Birch said, because what she said actually cries out for a case-by-case analysis. She started by saying, these cases take time. This is a complicated case. That's exactly the point the government is making, which is unlike in Giap and Leslie where there were errors that kept requiring remands, this is just a complicated case where everybody's been litigating. Nobody's asking. Your argument seems to be, hey, we have a powerful interest in not letting these people go because they'll abscond. I understand your opposing counsel to be saying nothing about let people go, but let people have a bail hearing. Let them make their case. How is the government hurt in any way by acknowledging that once you've got somebody in jail for more than six months, they ought to at least have the chance to come into court and say, hey, I'm miscast as being here under a mandatory detention under 1226C. It doesn't apply to me. That shouldn't be me. Or some other basis for getting an arbiter, hopefully a neutral arbiter, to look at the government's position instead of saying, throw away the key because these are bad people and we can keep them as long as we want until we get them out of the country. I mean, how's the government hurt by doing that? Well, there's a two-part answer to your question because you first said 1226C. There is a hearing that you can have called the Matter of Joseph hearing to say, I am not a criminal subject to 1226C, and Mr. Chavez did have that hearing, and at that hearing he was determined to be an aggravated felon. So there's that hearing. Then there's the issue about the length of detention. That's a separate issue. Well, or not the length of detention, the reason for detention. We haven't really mentioned the fact that detention is supposed to be because there is a risk of flight or a probability of criminal behavior. And in DEOP, we said there can be no question DEOP's detention for nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community was unreasonable and therefore a violation of due process. Forget about whether he's challenging appropriately, et cetera, et cetera. When someone is detained, there ought to be a hearing to determine whether he's being properly detained. Now, granted, under 1226, they shall detain him. But at some point, under Zavi does, it has constitutional implications. Why shouldn't there be a hearing to determine risk of flight, probability of danger, and if the government doesn't show that, then he's not detained anymore. The simplest answer to Your Honor's question is because the hearing, the bond hearing that you're talking about isn't decided by an all-knowing computer that can figure out with all certainty whether this individual is going to abscond. We have bail hearings all the time. Yes, Your Honor, but here was what happened in DeMoore. That was the regime pre-DeMoore, and pre-DeMoore what they determined was when you had this bond regime, when the people were released on bond, one out of five times they would not show up to court, a 77 percent chance they would be rearrested, and a 45 percent chance they would be rearrested two times after that. That was with an individualized bond hearing. But we have – I'm not sure that I understand your argument. Individualized situation is what we said in DEOP, and it's what Justice Kennedy said is required by the Constitution. You know, it could be that they want to show these statistics at such a hearing and say, you know, one person out of five in this person could be it, and then, you know, the hearing officer decides whether it's a risk of flight or not. This gentleman, there's not a whole lot here as to, you know, he has a family. It seemed to me he might be a candidate for, you know, I'm not going anywhere, and what I did ages ago was done ages ago. You know, I don't know how the statistics are going to enter in, but they could. Right, and I don't dispute any of that, but these hearings are happening all the time, and even in the non-criminal context where we make these determinations, one out of three people is still not showing up to their removal case. So is that a reason not to give a hearing under the Constitution? Your Honor, so that was the issue that DeMoore decided. In DeMoore, they asked, can we make that presumption that a group of non-citizens, that's what DeMoore says, when you apply the law versus citizens versus non-citizens, that's what's changing the calculus about the type of bond hearing we're talking about. I don't read DeMoore the way you do. I read DeMoore as, you know, saying we have brief proceedings, and when there are brief proceedings, and they usually don't last more than five months, you know, there really is, you know, it's a different situation. Then you have Kennedy's concurrence, which is pretty strong, that you need to have an individualized proceeding. So let me touch on that point, and then I'll touch on the earlier point. On that point, the quote, I think, is informative, because the quote from DeMoore says, it could become necessary then to inquire whether the detention is not to facilitate deportation, but to incarcerate for other reasons. And so here there's no dispute that this detention is to facilitate deportation. We are not delaying it. Wait a minute, wait a minute. It's two and a half years. Right. I think I'll let them speak for themselves. But I'm under the impression that their position is we've gotten past the point where this could reasonably be said to be holding him for deportation proceedings. It's taken on a punitive character. It's unconstitutional. So let's just, for the sake of argument, take it that that's the factual foundation, even if you disagree with it. Take it that is the factual foundation, and tell us whether or not Justice Kennedy's concurrence has weight. It's a plurality opinion in DeMoore. He gives them the fifth vote that makes it a majority. So what are we to make of what he says? I believe Justice Kennedy's concurrence absolutely has weight, Your Honor. Okay, so when he says that there's going to be a point in time at which the length of the detention becomes long enough, it's no longer the brief detention that the statistics quoted in DeMoore indicate. When it becomes longer than that, then you've got a problem, right? Yes, Your Honor. But in the facts of this case, which are incredibly important, because in GIOP we've got to go case by case, it's important to note that we have a 67-day continuance to file the petition for appeal that was asked for by the plaintiff in this case. So that's 67 days that were completely wasted. We have a 21-day extension to file the BIA brief by the petitioner. All of this is going to add up if I take it to 201 days of continuance. But why don't you make that argument to a bail officer? That's the point, right? If you've got good reasons for all this, that's why we have folks in robes, so that you can come in and the government can say, I know it's been two and a half years, so it'll probably be three years that this guy's in jail. But it's a good thing that he's in jail, and we're not at fault for this for the following reasons, X, Y, Z. I'm not sure why you're making that argument as a reason why he should never get a bail hearing instead of a reason why you should win at a bail hearing. Go ahead, let us have a bail hearing. Because there's two steps in Giap and Leslie. And the first step is the length of detention unreasonable. And then the second is the kind of analysis you're talking about, whether this person should still be detained. And what we're saying is in both Giap and Leslie, you have mistakes by the government that are making these proceedings too long. There's reversals. There's arguments that are being made that are erroneous. And that's why the delays are taking so long. Here the government is winning every single argument that it's making. And the removal could happen in January. So is the only argument that matters an argument that loses for the government? I mean, again, that's an interesting position, that it's not really a bona fide argument for the defense for the petitioner unless the petitioner wins. It's not the only way the petitioner can win. If each step of the proceeding, you can look at the transcript and you see that there's inordinate delay, you would say this is too much of a delayed proceeding. Which case says inordinate delay trumps the issue of the reasonableness of the length of detention itself? I think Leslie and Giap both stand for the principle, Your Honor, that we look at the purpose for the delay. And what's happening in Leslie is the government is losing. And in Giap, the government is losing. And so what they say is you can't punish the petitioner, the plaintiff, for the fact that they're making arguments and they're trying to keep their proceeding alive. But here the difference, Your Honor, is that the government is winning all of these arguments. So then because the government won, his challenges weren't bona fide? I mean, we have a lot of people who come before us and they lose. But they're not frivolous arguments. Yes, Your Honor, the issue is not that they're bona fide. The issue is the delay in the proceeding caused by some desire by the government to detain this person for some reason other than for their removal. So if someone's incarcerated for six years and the proceedings have been moving apace and the government is not responsible for delay, then just let them stay without a bond hearing because we're not going to say there's a responsibility on the part of the government. Is that your argument? Well, I would say this. I don't see how a proceeding would be able to take six years. I believe the reason these facts are so notable is because this is an extremely long proceeding where the government hasn't lost any step of the way. It's probably the longest you could ever have where the government hasn't... Do I know you're ignoring the Supreme Court? You're ignoring DeMoor? I don't. Brief proceedings. I would never ignore DeMoor, Your Honor. The judge did not. Nobody gave a categorical limitation in DeMoor. And here's the key quote. The question is whether the unreasonable delay by the INS in pursuing and completing deportation proceedings. Here there's no delay in either pursuing the deportation hearings or to continue these deportation hearings. It could become necessary to inquire whether the detention is not to facilitate deportation but to incarcerate for other reasons. Here we're not trying to keep Mr. Chavez in detention. We're trying to remove him as soon as possible. The law that precedes that is since the due process clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien, such as respondent, be entitled to individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. Yes, but they define unreasonability as that the detention is not to facilitate the deportation. All right. Well, we live within the world of DeMoor as seen through the lens of Diop and Leslie, right? Yes, sir. And Diop is pretty explicit in saying you can have nobody at fault. It doesn't have to be the government at fault or the petitioner at fault. At a certain point, a whole bunch of nobody at fault delays add up to an unreasonable delay and a constitutional or statutory violation if you take the constitutional avoidance view of the statute. Yes, sir. Okay. So why aren't we there in this case? You know, you're very emphatic that it's not our fault, it's not our fault, but since Diop says, in effect, we don't care whose fault it is. At a certain point, give the person a bail hearing because you just had them in jail too darn long. I think that's for the court. I mean, the court can read Diop in that manner, but the way the government is reading it. Well, here's how I would read Diop and Leslie, which is the government is contributing to the time of detention in those cases because it is making mistakes and it is delaying. We do not think Congress intended prolonged detention without a bond hearing. I think, yes, I agree with that statement. Nobody wants long detention without a bond hearing. Is this prolonged? Well, I think it's prolonged if you were to look at it in a vacuum, just a sheer number of days, but it's not prolonged when you take 200 days of continuances and when you take, Your Honor, the mass amount of time that the IJ took to protect the rights of Mr. Chavez. Mr. Fresco, that's exactly how Diop started, wasn't it? I mean, Diop is an opinion in which this court was at pains to say, and now we're going to walk you through all the delays. There are this many days for this. There are this many days for this. There are this many days for this. And it said very, very carefully and plainly, nobody's at fault here. Nobody's a bad guy here. But you add all these up and it's unreasonable. I'm not sure how you, I mean, you know, it sounded like you were trying to accuse the other side of wanting to relitigate things, but it sort of feels to me like you're trying to relitigate Diop. I'm not trying to relitigate Diop. I'm just noting, and I want to make one other key point. But let me just answer your question. I'm just noting that in Diop there were mistakes by the government. Yeah, but we said that doesn't matter. We were plain about that. We said nobody's at fault. And so let me just make one other fact issue about this case, Your Honor, which is that the district court, when they denied the habeas, said, please come back if the detention is prolonged. And that's what we believe should have happened in this case. We believe an appeal complicated these proceedings to a point where it's not clear whether we're defending the district judge's determination or whether we have a prolonged determination here. That's the other key question. Can I ask you the question I put to the other side here? And that's an important point. Yeah, and this is what is very difficult for me in this case. I hear the other side saying, and I'm sure you'll disagree with it, but I hear them saying there are thousands of people in detention. And you've tried to tell the government you've got to give them bail hearings when these detentions grow too long. But they're ignoring you. The government's not doing anything. You know, they're treating Diop and Leslie like, oh, that silly Third Circuit, whistling out around the corner. But we're not paying attention to them. And they say, look at their briefing. We've pointed out that these thousands of people are in detention and that they're not doing anything. And they say nothing to rebut that because they don't have anything to rebut it. That's why you have to come up with a six-month rule, Court, because if you don't, they'll keep saying, we'll keep you as long as we want. And maybe one or two of you will navigate the labyrinth of habeas corpus litigation on your own successfully and we'll let you out after three years. But the rest of you, tough for you. That's the systemic flaw argument they're making to us. And I would like you to respond to it. If you accept for purposes of discussion only that they're right, that you're not doing anything,  you can't do anything because you're rewriting the statute. I would say a few things, Your Honor. These type of determinations do happen on a case-by-case basis when I see that the detentions are taking too long. But what happens is you have to weigh the severity of the criminal offense, what's happening in the immigration proceeding, and how close are we to removing. These things happen. Well, rebut now then. Because they say you didn't do anything to rebut their assertion in their briefing. In this case, that's true. What can you tell us that the government is doing to address lengthy detentions, which they assert happen on a regular basis, that this five months that was quoted as the Norman DeMoor, that's ancient history. It ain't happening that way now. What do you have to rebut that? Well, we have, when these cases are brought to our attention, whether through the filing of habeas through an attorney, through another, through the petitioner themselves into detention, ICE does make these custody determinations on an ongoing basis. The problem is it is true that many times ICE doesn't release the individual because either the immigration proceeding is about to come to an end or the criminal conviction is so difficult to release such a person. You wouldn't want to say I released a rapist or a murderer into the public, and then if something happened you would want a court to release that person so that at least there's some explanation for why you released a murderer or a rapist into the public. And so that is the problem with that. In terms of changing GIOP, Your Honor, I believe that that would need to be done through an en banc panel. I believe GIOP, the fact-based determination is working. We're losing many cases. We're winning many cases. It's happening on a fact-by-fact case, and I believe the district court opinion here was correct. The issue is now we're 300 days later, but I believe that's why the district court gave motion for amending, and then we would have litigated it there. In the district court it was a year and a half, and they said it was a close case. Yes, Your Honor. And then your contention is, well, four months later he should have brought another habeas because it was longer. My question is, why didn't you after four more months pass say, you know, forget the appeal. We're just going to give you this hearing. Here's the problem we have. Because it was close then, and it's really close now, so you're entitled. Here's the problem we have, Your Honor. This is a convicted rapist, for better or for worse. We have a mandatory statute that says we have to detain this convicted rapist. We can't do it. As of June of 2012. As of any time this convicted rapist is going through immigration proceedings where the government has not erred. Well, you have to at least detain him initially, but then as Zavita says it becomes a point where the Constitution says no, you don't detain him without a hearing anymore. And I believe that, Your Honor, and here's what I'm easily willing to stipulate. The proceedings in January may end up complicating this case and taking it much, much longer. If that happens, of course Mr. Chavez would be entitled to a bond hearing. Why January? Yes. What's magic about January? It's almost December. We're here two and a half plus years in. Why is two more months going to make it plain that he gets a hearing? Because, Your Honor, in January if he loses, he's deported the next day. Mexico is a very easy country to deport the individual to. That doesn't follow. With all due respect, the fact that he may be deported tomorrow doesn't make the length of time he's been detained until now constitutionally reasonable. That's the argument we're having here today. It's not whether he should be in the country or should be out of the country. The merits are just off the table. The question is whether the statute and or the Constitution require that the man be given a hearing at which you could say he's a convicted rapist. Don't let him out. Right? Yes, Your Honor. But, again, I believe this is where DeMore specifically talks about the tough litigation choices that an alien has in this situation. That was the argument of DeMore. This dissuades someone from making these arguments in court. The court said even if the person is going to be detained longer, those are the tough choices an alien makes. If we lose, that means it was our fault for having detained this person. So we're back to fault. Well, no, because it talks about the reasonableness of the detention and whether it was geared toward removing the individual, Your Honor. And so what we're saying is, to sum up, we're trying to remove him. We will show up tomorrow for the merits hearing in this court. We're trying to – we oppose the stay. We're not trying to detain him to keep him in detention. We want to remove Mr. Chavez. And so for that reason, that's why we believe his detention is not reasonable, because it's trying to accomplish that goal.  Not unreasonable, yes. Okay. Thank you, Your Honor. Thank you. All right. Brief rebuttal. Thank you, Your Honor. Emphasis on brief. So it's been three years since this court decided yes, and the government has not come up with a single example because there is none, where it itself has determined that mandatory detention has become unreasonable. The argument you just heard makes clear why a systemic remedy is necessary, and there's another way this court could construe the statute absent a presumption that would address these systemic concerns, namely that at six months, the statute could be read to require a reasonableness hearing, not a bond hearing, but a reasonableness hearing into whether mandatory detention has stretched beyond a reasonable period of time. That's consistent with this court's recognition in DIOP that mandatory detention becomes more constitutionally suspect as it passes the six-month mark and would allow for a case-by-case, individualized approach. You would take a look at whether the detainee is engaged in frivolous tactics, delay tactics, whether the government has unreasonably delayed. You couldn't hold mandatory detention unreasonable merely because the person is engaged in or pursued bona fide claims for relief or require the government to do so. And who would have the burden of proof in that reasonableness hearing? We think the government should bear that burden. That's typical in the civil detention context. The government should bear the burden of justifying civil detention. But what's more important is that there is a hearing. So how is that meaningfully different from a bail hearing? Why would you have a hearing to decide whether to hold them so you could have a hearing? Right, because, well, Your Honor, the question would not be whether the person is a flight risk in danger such that their detention is warranted. The question is whether their mandatory detention is reasonable under the DIOP framework. So you're bringing in the fault of the delay. Right, the issue is that the court highlighted in DIOP and Leslie. And as the government pointed out, the immigration courts are open to that inquiry. The regulations authorize the immigration judge to determine whether someone is properly subject to the statute. So you want fault to be part of this. Just like the government says, hey, let's talk about fault here, you think we should be talking about fault here despite DIOP saying it doesn't matter whose fault the delay is? Maybe I was unclear, Your Honor. We don't think fault is a requirement. Length is the primary factor. If someone is simply fighting their case, pursuing bona fide claims, and their case takes a long time to decide, their mandatory detention can become unreasonable. But if someone is engaging in frivolous delay, that is relevant to whether mandatory detention, so it's not a requirement, but it's potentially relevant to the inquiry. And then if they lose at that juncture, then they're gone. Then they don't have a right to the bond hearing no matter what. Well, just a question of where that leaves you if the government shows that at least it's reasonable at that point. Well, if it's reasonable, they stay in mandatory detention consistent with the court's decisions in DIOP and Leslie. Thank you. Thank you. The case is well argued.